1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WENLING SHU,

             Plaintiff,

    v.

DONG MA, *et al.*,

             Defendants.

CASE NO. C21-01432-LK

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

This matter comes before the court on Plaintiff Wenling Shu's motion for partial summary judgment for specific performance against Defendants Dong Ma and Bing Su.[1] Dkt. No. 16. Shu seeks an order requiring Defendants, a married couple, "to execute and record a deed of trust" on their "personal residence which they offered as security for a debt they owe" to Shu. *Id.* at 1.

Defendants oppose the motion and request that the Court enter summary judgment for Bing Su and the marital community instead, or in the alternative, grant Defendants a continuance under Federal Rule of Civil Procedure 56(d) to conduct discovery. Dkt. No. 24. Having reviewed the

---

[1] The Complaint identifies Defendant as "Su Bing," Dkt. No. 1 at 1, but in her declaration, Defendant identifies herself as "Bing Su." Dkt. No. 26 at 1. Consistent with Defendants' filings, the Court will refer to Defendants as Bing Su and Dong Ma. *See, e.g.*, *id.*; Dkt. No. 24 at 3.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 1

1   motion and the balance of the record, the Court grants Defendants' request for a Rule 56(d)
2   continuance and denies Shu's motion without prejudice to refiling after the parties conduct
3   discovery.

4   **I.       BACKGROUND**

5           Dong Ma is a co-founder of ViaRV, LLC, a recreational vehicle ("RV") rental company
6   headquartered in Bellevue, Washington. Dkt. No. 27 at 2. In 2017, Ma and ViaRV's handful of
7   shareholders decided to expand the business into California. *Id.* Shu, a realtor in California who
8   had known Ma for many years, offered to help him find an office location in California for ViaRV.
9   Dkt. No. 27 at 2; Dkt. No. 17 at 1. The two disagree about which one of them approached the other
10  about Shu investing in ViaRV, but that dispute is not material to resolving this motion. Dkt. No.
11  27 at 2; Dkt. No. 17 at 1.

12          Shu claims that Ma guaranteed that she would recoup her principal if she invested in the
13  business and promised that the offices of ViaRV, the office of a separate insurance business he
14  operated, and his home were all available as collateral. Dkt. No. 17 at 1. During 2018, Shu made
15  a series of money transfers to Ma or to Via RV totaling $1,050,000. *Id.* at 2; Dkt. No. 27 at 2. On
16  December 31, 2018, Shu and Ma, along with the other shareholders, executed a shareholder
17  agreement under which Shu acquired two shares of common stock and a 10.5% stake in the
18  company. Dkt. No. 27-1. The Shareholder Agreement requires written consent of all shareholders
19  to approve actions affecting "rights relating to the issuance of shares of the Corporation." Dkt. No.
20  27-1 at 3. It also governs distribution of corporate income and losses—and any net income
21  distributed to shareholders "shall be approved by all Shareholders." *Id.* at 4. If a shareholder elects
22  not to take a distribution but instead "offer the moneys as a loan to the Corporation," all
23  shareholders must approve issuance of the loan, and the loan is to be repaid "when the Shareholders
24  agree that there are enough corporate funds to pay the loan." *Id.* at 4–5.

1    Ma sought an additional $150,000 from Shu in March 2019. Dkt. No. 17 at 2. Shu was

2    reluctant to invest any more money in ViaRV, but she agreed to make a personal loan of $150,000

3    to Ma. *Id.* Ma contends that all of Shu's payments were to the business, not personal loans to him.

4    Dkt. No. 27 at 2.

5    In 2019, Ma and Shu agreed to package the $1,050,000 debt and the $150,000 loan into

6    one loan. Dkt. No. 17 at 3. To accomplish that goal, Shu drafted and sent to Ma the agreement that

7    is the subject of this motion. Dkt. No. 27 at 2; Dkt. No. 27-2; Dkt. No. 17 at 21 (the "Agreement").[2]

8    In the one-page Agreement, Shu agreed to lend $1,200,000 to Ma, who is identified as the

9    "borrower," and Ma agreed to return the entire sum of the loan to Shu on April 1, 2021. Dkt. No.

10    27-2 at 1. The Agreement also contained the following paragraph, which is at the heart of the

11    parties' current dispute:

12        5. Ways of Guarantee:
        In case of loss of business, Borrower Dong Ma agrees to offer his primary house

13            as a guarantee to pay $1,200,000 to lender Wenling Shu.

14    *Id.* The provision then lists the address for Ma's primary house. The Agreement was signed by

15    Shu and Ma and dated March 25, 2019. *Id.*

16    Shu wrote a letter to Ma in January 2020 in which she listed the loans she had made, the

17    amounts, and the anticipated repayment dates. Dkt. No. 27-3.[3] She wrote, "While the trust attorney

18    strongly recommends putting a lien on your house to ensure the smooth fulfillment of the loan

19    contract in unexpected circumstances, I still didn't do it out of trust in you." Dkt. No. 27-3 at 1.

20    In March 2021, Shu requested that Ma execute and record a deed of trust on his residence

21

22    ---
[2] English is not Defendants' first language, and some of the parties' agreements were originally written in Chinese
and translated into English for this lawsuit. *See* Dkt. No. 27 at 1. The parties do not state that the Agreement was
23    originally written in a language other than English.

24    [3] Either the amounts in the letter or the translation of the letter is incorrect; the four loan amounts in the letter are listed
as $450,000, $50,000, $55,000, and $15,000. Dkt. No. 27-3 at 1. These amounts do not total $1,200,000; it appears
the correct amounts are $450,000, $50,000, $550,000, and $150,000. Dkt. No. 17 at 2–3.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 3

1   and on the ViaRV property in California to secure her loan. Dkt. No. 27 at 3. She also requested

2   that Ma sell his residence and repay her with the proceeds. *Id.* Despite those requests, Ma has not

3   recorded a deed of trust or other instrument on his residence in favor of Shu. Dkt. No. 17 at 3.

4        Ma did not repay the $1,200,000 loan to Shu by April 1, 2021, and he stopped making

5   payments on the loan after May 2021. *Id.* Shu alleges that after Ma ceased payments, he informed

6   her that he was planning to sell his home to another creditor, and if he did so, he could only pay

7   Shu about $700,000. Dkt. No. 17 at 3–4.[4] Ma denies threatening to sell the home to another

8   creditor. Dkt. No. 27 at 3.

9        Shu filed her complaint with this Court on October 20, 2021. Dkt. No. 1. She asserts a

10  claim for breach of contract and seeks damages, specific performance, and injunctive relief. *Id.* at

11  4–6.

12                          **II.      DISCUSSION**

13  **A.     Jurisdiction**

14       The complaint alleges that Shu is a citizen of California, and Ma and Bing Su are citizens

15  of Washington. Dkt. No. at 1 at 1–2. The amount in controversy exceeds $75,000 based on Shu's

16  allegation that her damages exceed $1,200,000, exclusive of costs and interest on the loan. Dkt.

17  No. 1 at 4. Therefore, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

18  **B.     Summary Judgment Standard**

19       Summary judgment is appropriate only when "the movant shows that there is no genuine

20  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

22  stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the

23

24  ---
[4] Shu also contends that "Defendants' counsel indicated that they had contacted a bankruptcy attorney" to explore options, but the declaration she cites in support is not in the record. Dkt. No. 16 at 4 (citing "Oster Decl.").

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 243. And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). Metaphysical doubt is insufficient, *id.* at 586, as are conclusory, non-specific allegations, *Lujan*, 497 U.S. at 888–89.

## C.    Defendants' Request for Summary Judgment

Despite seeking summary judgment in their favor in their response brief, Dkt. No. 24 at 4, 11 & n.33, Defendants did not cross move for summary judgment or follow the other requirements of Local Civil Rule 7. They did not caption the filing as a motion or note it on the Court's motions calendar for a date no earlier than the fourth Friday after filing, which would have allowed Shu a full opportunity to respond. *See* LCR 7(b)(1), 7(k); *Meghinasso v. Mercedes-Benz USA*, No. C17-5930-LK, 2022 WL 226078, at *1 (W.D. Wash. Jan. 26, 2022) ("[I]t is procedurally improper to include a request for affirmative relief in a response brief."); *Travelers Indem. Co. of Am. v. Dodson-Duus, LLC*, No. C12-5625-BHS, 2013 WL 4498694, at *3 (W.D. Wash. Aug. 21, 2013) ("Defendants' motion seeks dispositive relief, which the Court declines to consider in a responsive brief or as a motion to strike."). Because Defendants' request is not properly before the Court, the

Court declines to consider their request for relief and construes their response as just that—a response to Shu's motion for partial summary judgment.

**D.      Shu's Motion for Partial Summary Judgment**

Shu seeks an order requiring Defendants "to execute and record a deed of trust" in favor of Shu on their personal residence. Dkt. No 16 at 1. Defendants respond that Shu is not entitled to specific performance because Ma could not have unilaterally encumbered the property, and even if he could have done so, the "Ways of Guarantee" provision in the Agreement contains a condition precedent requiring "loss" of the business—which has not occurred—before Ma was required to offer the residence as collateral. Dkt. No. 24 at 2–3. The Court first summarizes the law applicable to Shu's breach of contract claim and then addresses Defendants' request for a Rule 56(d) continuance.

1.      Shu's Breach of Contract Claim

In Washington, specific performance may be granted if "a valid contract exists, a party has [threatened] or is threatening to breach the contract, the terms of the contract are clear, and the contract is not the product of fraud or unfairness." *Pardee v. Jolly*, 182 P.3d 967, 973 (Wash. 2008).[5] Washington follows the "objective manifestation theory" of contract interpretation, focusing "on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). Washington courts thus "impute an intention corresponding to the reasonable

---

[5] Because the Court's jurisdiction is based on the diversity of the parties, the Court must apply Washington's choice of law rules. *See Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington law, absent an actual conflict with the laws and interests of another state, Washington law presumptively applies. *See Burnside v. Simpson Paper Co.*, 864 P.2d 937, 941 (Wash. 1994). No party has identified any conflict or argued that any law other than Washington's governs Shu's claims. Absent a conflict or choice of law provision in the Agreement, the court applies Washington substantive law. The parties are cautioned that "[b]ecause Washington courts have made the judgment that 'unpublished' state court decisions should not shape their decisions, this court follows their lead." *Cont'l W. Ins. Co. v. Costco Wholesale Corp.*, No. C10-1987 RAJ, 2011 WL 3583226, at *4 (W.D. Wash. Aug. 15, 2011); *see also* GR 14.1(a) ("Unpublished opinions of the Court of Appeals have no precedential value and are not binding upon any court."); Dkt. No. 16 at 7 (citing unpublished Washington State Court of Appeals case).

1    meaning of the words used" based on the words' "ordinary, usual, and popular meaning" unless

2    "the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Accordingly, "the

3    subjective intent of the parties is generally irrelevant if the intent can be determined from the actual

4    words used." *Id.* If relevant for determining mutual intent, Washington courts allow extrinsic

5    evidence "'to determine the meaning of *specific words and terms used*' and not to 'show an

6    intention independent of the instrument' or to 'vary, contradict or modify the written word.'" *Id.*

7    (emphasis added in *Hearst*) (quoting *Hollis v. Garwall, Inc.*, 974 P.2d 836, 842 (Wash. 1999)).

8    Extrinsic evidence includes the subject matter and objective of the contract, all the circumstances

9    surrounding the making of the contract, the subsequent acts and conduct of the parties, and the

10   reasonableness of the respective interpretations urged by the parties. *Berg v. Hudesman*, 801 P.2d

11   222, 229 (Wash. 1990).

12         In Defendants' Answer, Ma admitted "offering the primary residence belonging to him and

13   defendant Bing Su as a guarantee on beha[lf] of Via RV, LLC" in the Agreement. Dkt. No. 15 at

14   3. But the parties agree on little else with respect to the Agreement. Defendants argue that the

15   Agreement is unenforceable and void as to Bing Su and the marital community because Ma could

16   not have unilaterally encumbered their house, a community asset. Dkt. No. 24 at 8–12; Dkt. No.

17   18 at 1. Defendants base this argument on Section 26.16.030 of the Revised Code of Washington,

18   which states that neither spouse "shall sell, convey, or encumber the community real property

19   without the other spouse or other domestic partner joining in the execution of the deed or other

20   instrument by which the real estate is sold, conveyed, or encumbered, and such deed or other

21   instrument must be acknowledged by both spouses or both domestic partners." Wash. Rev. Code

22   § 26.16.030(3). Shu counters that because the Agreement "is not itself an actual conveyance or

23   encumbrance," and "is instead an agreement which called for later execution of an encumbrance,"

24   Section 26.16.030 is inapplicable. Dkt. No. 31 at 4.

1        The parties leave numerous questions unanswered. They do not address the effect (if any)

2 of the Shareholder Agreement, Dkt. Nos. 1-4, 27-1, on the Agreement's validity. And if there is a

3 material effect, the parties will need to address whether Via RV is a required party to this action.

4 *See* Fed. R. Civ. P. 19. In addition, while Shu argues that the "general rule" in Washington allows

5 either spouse to manage community property, Dkt. No. 31 at 5–6, she fails to address the

6 application of that rule to the type of community real property at issue in this case—a primary

7 residence.[6] To the extent Shu is correct that there is a distinction between "the actual encumbrance

8 of real estate"—requiring both spouses' execution and acknowledgment—and "a real estate

9 contract which calls for the parties to execute a separate encumbrance instrument," Dkt. No. 31 at

10 5, Shu fails to address whether the resulting right without a remedy (absent action by Bing Su)

11 renders it a distinction without a difference. Finally, assuming without deciding at this juncture

12 that Ma could not unilaterally encumber the property, there is an issue of fact based on the limited

13 current record regarding whether Bing Su ratified the Agreement. Dkt. No. 24 at 11

14 (acknowledging that Ma could have encumbered the property with the "acknowledgement or

15 joinder of his wife"); *see also Nichols Hills Bank*, 701 P.2d at 1116–1117 (explaining that a non-

16 signing spouse can consent to or ratify a contract and stating that the "consent of a spouse to a

17 transaction is a factual determination to be evaluated from the circumstances of each case");

18 *Daddabbo v. Countrywide Home Loans, Inc.*, No. C09-1417RAJ, 2010 WL 2102485, at *4 (W.D.

19

20 ──────────

[6] Section 6.13.060 of the Revised Code of Washington—which neither Plaintiff nor Defendants have addressed—
shields a non-joining spouse or domestic partner from improvident, unilateral transfers or encumbrances of a
21 homestead. *See* Wash. Rev. Code § 6.13.060 ("The homestead of a spouse or domestic partner cannot be conveyed or
encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledged by both
spouses or both domestic partners[.]"). Taken together, Sections 26.16.030 and 6.13.060 provide members of a marital
22 community or domestic partnership with protection against unilateral sale, conveyance, or encumbrance of community
real property, including homesteads; such unilateral action is voidable at the election of the nonjoining spouse or
partner. *See id.*; *Palomarez v. Wilcox*, 475 P.3d 512, 517 (Wash. Ct. App. 2020); *Taylor Distrib. Co. v. Haines*, 641
23 P.2d 1204, 1206 (Wash. Ct. App. 1982); *see also* Wash. Const. art. XIX, § 1; *Nichols Hills Bank v. McCool*, 701 P.2d
1114, 1117 (Wash. 1985) (en banc) ("[T]he delegation of authority to manage community property does not cloak the
24 managing spouse with authority to enter into a transaction that specifically requires the involvement of both parties.").

1    Wash. May 20, 2010).

2          The parties also hotly dispute at what point the "Ways of Guarantee" provision in the

3    Agreement obligates Ma to provide his residence as collateral. The provision states that "[i]n case

4    of loss of business, Borrower Dong Ma agrees to offer his primary house as a guarantee to pay

5    $1,200,000 to lender Wengling Shu." Ma contends that "loss of business" was a condition

6    precedent that had to occur before his obligation ripened: "From my conversations with Plaintiff,

7    I understood [the Ways of Guarantee provision] to mean that I did not and do not have any

8    obligation to offer the Residence as collateral as long as the business was operating—which it

9    presently is." Dkt. No. 27 at 3.[7] For her part, Shu argues that failure of the business was not a

10   condition precedent, but even if it were, the condition has occurred because the business has

11   effectively failed, as evidenced by its poor financial condition. Dkt. No. 31 at 12–13. Therefore,

12   she argues, the Court should require Ma to record a deed of trust on the residence now to effectuate

13   the guarantee in the Agreement.

14         Whether a contract provision is a condition precedent or a contractual obligation depends

15   on the intent of the parties, which courts determine from a fair and reasonable construction of

16   language the parties used and a consideration of all the surrounding circumstances. *Oliver v. Alcoa,*

17   *Inc.*, No. C16-0741-JLR, 2016 WL 4734310, at *5 (Sept. 12, 2016) (citing *Koller v. Flerchinger*,

18   441 P.2d 126, 128 (Wash. 1968)).[8] Here, the surrounding circumstances of the Agreement are

19   murky at best; indeed, the parties did not have the benefit of discovery when Shu filed her motion

20

21   ---

     [7] Ma also argues that Shu did not ask him to record a lien or deed of trust immediately when they signed the Agreement;
22   she did not make such a request until approximately two years later: "At the time we executed the Agreement, Plaintiff
     never requested or demanded that I immediately record a deed of trust or lien on my Residence as that was not part of
     our Agreement. Plaintiff never made such a request until the spring of 2021, at the earliest." Dkt. No. 27 at 3.

23   [8] "Where it is doubtful whether words create a contractual obligation or a condition precedent, the court should
     interpret them as creating a contractual obligation." *Id.* (citing *Ross v. Harding*, 391 P.2d 526, 531 (Wash. 1964)).
24   "However, words such as 'provided that,' 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after' suggest a
     conditional intent and not a contractual obligation or promise." *Id.* (citing *Jones Assocs., Inc. v. Eastside Props., Inc.*,
     704 P.2d 681, 684 (Wash. Ct. App. 1985)).

1   for summary judgment. *See* Dkt. No. 25 at 1–2.

2       The abundance of unanswered questions and missing pieces in this phase of the case

3   provides a good example of why a summary judgment motion filed at the commencement of an

4   action will often "be premature until the nonmovant has had time to file a responsive pleading or

5   other pretrial proceedings have been had." Fed. R. Civ. P. 56, Advisory Committee's Notes (2010

6   Amendments, Note to Subdivision (b)). This brings the Court to Defendants' Rule 56(d) request.

7       2.   Defendants' Rule 56(d) Request

8       Defendants argue that Shu's motion is premature and request additional time to conduct

9   discovery under Federal Rule of Civil Procedure 56(d). Dkt. No. 24 at 17–18. Shu did not respond

10  to these arguments. *See generally* Dkt. No. 31.

11      Rule 56(d) provides that if the nonmoving party "shows by affidavit or declaration that, for

12  specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

13  considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

14  discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Relief may be denied,

15  however, if the moving party has not acted diligently in pursuing discovery or fails to show how

16  the information sought would preclude summary judgment. *See California Union Ins. Co. v. Am.*

17  *Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).

18      Here, Defendants filed their request early in the case, and submitted a declaration from

19  their counsel stating that Defendants had no opportunity to conduct discovery before their response

20  was due because Shu filed her motion for summary judgment just 11 days after Defendants filed

21  their answer. Dkt. No. 25 at 1–2 ("No discovery has been exchanged, and there has been no

22  opportunity to serve written discovery . . . or to take depositions."); *see also IVC Highlands TT,*

23  *LLC v. DirectBuy, Inc.*, No. C16-0327RAJ, 2016 WL 3690127, at *2 (W.D. Wash. July 12, 2016)

24  (finding that a Rule 56(d) request was timely when it was "filed within the time Defendant had to

oppose the summary judgment motion"). In addition, Defendants argue that they need time to conduct discovery regarding the "fact-based principles of contract interpretation and construction" at issue in the case to gather "all the facts necessary" for their defense. Dkt. No. 24 at 17. They also note that in Shu's motion, she quotes extensively from alleged text messages between the parties regarding the Agreement, but she has not yet produced those messages to Defendants. *Id.* at 18. That information is relevant to the parties' intent, the circumstances surrounding execution of the contract, and the construction of the disputed contract terms in the Ways of Guarantee provision.

Furthermore, there is no evidence of delay on Defendants' part with respect to discovery. They had no opportunity to conduct discovery before Shu filed her motion, and the discovery period does not end until September 1, 2023. Dkt. No. 25 at 1; Dkt. No. 42. Where, as here, "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[d] motion fairly freely." *Burlington N. Santa Fe R.R. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (citing the prior version of Rule 56(d)). Accordingly, the Court concludes that Defendants are entitled to relief under Rule 56(d) and denies Shu's motion for summary judgment without prejudice to refiling after completion of the discovery Defendants claim to need. If the parties intend to rely on translations of documents originally written in a foreign language in a future motion, the translation must conform to the requirements of the Rules of Evidence. *See, e.g.*, Fed. R. Evid. 604 ("An interpreter must be qualified and must give an oath or affirmation to make a true translation.").

## III.    CONCLUSION

Based on the foregoing, the Court DENIES Shu's motion for partial summary judgment without prejudice. Dkt. No. 16.

Dated this 18th day of October, 2022.

Lauren King
United States District Judge